## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| A.B. Tofa, LLC / Abraham N. Tofa | ) | Chapter 7 |
| | ) | |
| **Debtor** | ) | Case No. 23-15233 |
| | ) | |
| **COREY WIGGINS** | ) | |
| **Plaintiff** | ) | Adv. Proc. 24-00044 |
| | ) | |
| **V** | ) | |
| | ) | **F I L E D** |
| **ABRAHAM N. TOFA** | ) | |
| **Defendant** | ) | **UNITED STATES BANKRUPTCY COURT** |

**NORTHERN DISTRICT OF ILLINOIS**

**MAY 29 2024**

**JEFFREY P. ALLSTEADT, CLERK**

## COMPLAINT (AMENDED)

NOW COMES Plaintiff, Corey Wiggins, a Pro Se Litigant, files this amended Complaint against Defendant, Abraham N. Tofa as follows:

## JURISDICTION

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2), as it involves the determination of the Dischargeability of a particular debt under 11 U.S.C. § 523, and issues of fraud, false oaths, false statements, and bad faith filings by the Defendant.

**VENUE:** Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.

**STATUTORY AUTHORITY:** This proceeding is brought pursuant to Federal Rules of Bankruptcy Procedure 7001, which delineates the types of proceedings that constitute adversary proceedings, including objections to discharge and actions to determine the validity, priority, or extent of a lien or other interest in property.

## BACKGROUND

**Civil Lawsuit**

1.   Plaintiff, **COREY WIGGINS (Pro Se Litigant),** of 1049 Michael Court, Unit #222, Glendale Heights, DuPage County, Illinois, 60139**, has been falsely listed as a creditor of the above-named Debtor.**

2.   Defendant, **ABRAHAM TOFA (Debtor),** of 1676 Rose Cricle, Romeville, Will County, Illinois 60446**,** is the Debtor in the above-captioned proceedings.

3.   This is an action Pursuant to **11 U.S.C. 523(a)(2), 727(a)(4)(A), and 727(a)(4)(B)** objecting to the discharge of the Debtor/Defendant.

4.   Plaintiff has investigated the actions of Debtor and being satisfied that the proper grounds exist for denial of the discharge of the Debtor, objects to granting of discharge of the Debtor, particularly as to the debt of Defendant to Plaintiff as described below.

5.   Defendant**, Abraham Tofa**, *who was the sole authorized managing member of A.B. TOFA, LLC (hereinafter referred to as Defendant collectively*), by which Defendant personal information as to his own activities and all other actions were potentially fraudulent and violated Codes of Federal Regulations, **Title 49 C.F.R. 376.12 Lease Requirements, and others.**

6.   Plaintiff, who was an independent contractor, *(with his own truck, hereinafter referred to as "Corey's Truck,")* and **A.B. TOFA, LLC, a United States Department Of Transportation (USDOT) authorized carrier/trucking company** whom Defendant, **Abraham Tofa,** was the sole managing member. Entered into an **Owner Operator Lease Agreement (OOLA)** on or about **May 28, 2018**.

7.   Defendant abused his USDOT carrier authority, controlled Plaintiff revenue and cash flow, made arbitrarily deductions from Plaintiff compensation and did not provide documents to verify the validity of the charge(s). *(Defendant's actions are a violation of The Code of Federal*

***Regulations Title 49 (CFR 49), specifically CFR 49 376.12(h), Charge-back items and CFR 49 376.12(i), Products, equipment, or services from authorized carrier.***

8.    Defendant has been a Defendant in a pending State Court Civil lawsuit against A.B Tofa, LLC and Abraham Tofa, filed on or about, ***09/02/2020***. ***(Case No. 2020 CH 05685)***

9.    Defendant and Plainti entered into a Vehicle Purchase Agreement, which involved a 2014 Freightliner Cascadia. Per the C.F.R. 49 376.12(i), Products, equipment, or services from authorized carrier, (The lease shall specify the terms of any agreement in which the <u>lessor</u> is a party to an equipment purchase or rental contract which gives the <u>authorized carrier</u> the right to make deductions from the <u>lessor</u>'s compensation for purchase or rental payments.) ***The Defendant allegedly violates this CFR 49 376.12(i), which breached the OOLA.***

### Deposition and Discovery

10. Defendant was placed under oath and deposed on or about **October 17, 2022**, in connection to the Civil Lawsuit.

11. During the deposition on or about **October 17, 2022**, Defendant allegedly made false and evasive statements, and did not provide documentation requested to verify or support defendant statements as being truthful and transparent. Subpoenas are needed to ascertain the truthfulness of statements surrounding the sale of the 2014 Freightliner Cascadia and all other subsequent equipment dealing with the estate of ***A.B. Tofa, LLC*** bankruptcy case and claims of liquidation.

12. It was further discovered there were ***"Unfair Business Practices," and potential Codes of Federal Regulations (CFR) violations, specifically regarding CFR 49 § 376.12 "Lease Requirements" and CFR 395.36 "Driver Access to Records."***

13. It was further discovered during the deposition on or about **October 17, 2022**, that Defendant sold a ***2014 Freightliner Cascadia***, which was the subject of the State Court Civil Matter, where the nature of the lawsuit is ***"Unjust Enrichment" with an Ad Damnum of 50,000.00 plus costs.***

**Non-individual Bankruptcy Filing**

***14.*** The Plaintiff has attached for the review of this Honorable Court a copy of the "State Court Civil Complaint,"(***Exhibit A***) which highlights discrepancies within the Defendant's Bankruptcy petition and the ongoing State Court Civil Matter. ***In the Defendant's bankruptcy schedules, a debt totaling $200,000 is indicated, categorized under "collections." Conversely, the State Court Civil Complaint identifies the lawsuit as "Unjust Enrichment," with a monetary claim of only $50,000.00 plus associated costs. Notably, the Defendant has yet to substantiate the designation of the Plaintiff as a Creditor or furnish documentation verifying the asserted debt amount of $200,000 purportedly owed to the Plaintiff.***

15. Defendant, was the sole authorized managing member of **A.B. Tofa, LLC**, filed a non-individual Chapter 7 bankruptcy petition on or about **12/04/2022**.

16. During the 341 Meeting on **01/11/2023**, Defendant was asked how he came to owe Plaintiff. Defendant stated that he told his attorney about the State Court Civil lawsuit, and his attorney proceeded from there.

17. *On or about **06/06/2023**, Defendant was placed under oath for a 2004 Examination in connection with the non-individual Chapter 7 bankruptcy case.*
   - ***Defendant did not list the 2014 Freightliner Cascadia in the non-individual Chapter 7 bankruptcy petition for A.B. Tofa, LLC.***
   - Additionally, Plaintiff witnessed potential bankruptcy fraud, false oaths, false statements, false declarations, collusion, and concealment of assets in connection to the non-individual Chapter 7 bankruptcy filing. ***(Bk Case No. 22-bk-14012)***

**Personal Bankruptcy Filing**

18. Defendant subsequently filed a personal Chapter 7 bankruptcy petition. During two separate 341 Meetings on or about **12/07/2023** and on or about **01/26/2024**, when asked how it was determined he owed Plaintiff, Mr. Wiggins $200,000.00?

   - Defendant continues to state, he told his attorney about the civil lawsuit and his attorney went from there.

   - Defendant was further asked the name of the attorney or law firm, to which Defendant replied it was his bankruptcy counsel, David Siegel and Associates.

**Note:** It is imperative that the Defendant and the Defendant's bankruptcy attorney adhere to the principles of truthfulness and transparency, ensuring that all listed creditors and debts are accurate and valid. Pursuant to 11 U.S.C. § 521(a)(1)(B)(i) and 11 U.S.C. § 727(a)(4)(A), the debtor is required to file a list of creditors and a schedule of assets and liabilities, and discharge may be denied if the debtor knowingly and fraudulently made a false oath or account in connection with the case. Compliance with these provisions is essential to maintain the integrity of the bankruptcy process.

## Adversary Proceedings and Subsequent Actions

19.  Plaintiff filed an Adversary Proceeding/Complaint on 02/02/2024, objecting to discharge.
   - Defendant's counsel filed an appearance on 04/24/2024.
   - On 05/08/2024, Defendant and his counsel filed a Motion to Dismiss Plaintiff's Complaint.

   - On 05/13/2024 Plaintiff filed a Notice of Objection, objecting to the motion to dismiss Plaintiff's Complaint.

   - The Honorable Deborah L. Thorne ORDERED that Defendant's motion is granted and Plaintiff's complaint is dismissed. The Plaintiff is given leave to file an amended complaint on or before May 22, 2024.

## Statement Regarding Subsequent Entry of Restricted Case Information

20.  Plaintiff respectfully states that any subsequent entry of information related to a restricted case(s) within this Complaint is solely an attempt to present factual circumstances relevant to the current proceedings. It is not intended to disregard or contravene any orders issued by the Honorable Judge. Plaintiff acknowledges and respects the Judge's directives and seeks only to ensure a complete and accurate presentation of pertinent facts.

## RELIEF SOUGHT

Plaintiff requests that this Court:

1.  Relief from Automatic Stay due to alleged fraud, false oaths, false statements, and bad faith filings.

- Pursuant to **11 U.S.C. 362(d)(1),** the Court may grant relief from the automatic stay for cause, including fraud and bad faith. Defendant has allegedly abused the bankruptcy process to hinder, delay, or eliminate the Civil Court Case.

**Reference Cases**
- In re Little Creek Development Co., 779 F.2d 1068 (5th Cir. 1986) (establishing that lack of good faith constitutes cause for lifting the automatic stay

- In re Levander, 180 F.3d 1114 (9th Cir. 1999) (affirming that fraudulent behavior can justify lifting the automatic stay

2. Denial of Chapter 7 Discharge due to alleged fraud, false oaths, false statements, and bad faith filings.

- Pursuant to 11 U.S.C. 523(a)(2), 727(a)(4)(A), and 727(a)(4)(B), the Court may deny discharge if the debtor has committed fraud, made false oaths or statements, or engaged in bad faith filings.

**Reference Cases**
- In re Retz, 606 F.3d 1189 (9th Cir. 2010) (denying discharge for false oaths and concealment of assets.

- In re Khalil, 379 B.R. 163 (9th Cir. BAP 2007) (denying discharge based on fraudulent intent.

3. Denial of Discharge of Defendant's debts under **11 U.S.C. § 523 and 11 U.S.C. § 727** due to alleged fraudulent conduct, false oaths, and other violations cited herein.

4. Award Plaintiff costs and any other relief the Court deems just and proper.

5. Plaintiff request to be removed from Debtor's / Defendant's Bankruptcy petition as the Debtor has falsely listed the Plaintiff as a Creditor.  Misrepresenting Plaintiff as a creditor can violate due process rights if it affects the Plaintiff ability to pursue justice due to the automatic stay halting Plaintiff efforts in the State Court Civil Matter.

- Pursuant to **11 U.S.C.  727(a)(4)(A),** code can mandate denial of discharge if the debtor knowingly and fraudulently made a false oath or account in connection with the bankruptcy case. The discrepancies and lack of documentation provided

by the Defendant can be construed as false statements intended to deceive the court and creditors.

**Reference Cases**
- In re Waldron, 785 F.2d 936 (11th Cir. 1986) deliberate omissions or false statements can result in the denial of discharge.

- In re Coastal Plains, Inc., 179 F.3d 197 (5th Cir. 1999) The court emphasized that omissions or misrepresentations in bankruptcy filings undermine the integrity of the bankruptcy process and can result in sanctions.

**Sanctions and Prosecution**

Should the bankruptcy court find evidence of fraud, false oaths, false statements, bad faith filings or abuse of the bankruptcy process to hinder, delay or eliminate the Civil Court Case. Plaintiff request the Court to impose sanctions and refer the matter for prosecution under 18 U.S.C 152 (Concealment of assets; false oaths and claims; bribery) and 18 U.S.C 157 (Bankruptcy fraud).

**Reference Cases**
- In re Lewis, 797 F.2d 1307 (5th Cir. 1986) (affirming sanctions for false statements and abuse of the oaths)

- In re Cochran, 546 B.R. 202 (Bankr. E.D. Ky. 2016) (imposing sanctions for fraudulent conduct and false oaths)

Date: May 28, 2024,          Signature: _Corey J Wiggins_

Name:    Corey J. Wiggins
Address: 1049 Michael Court
             Glendale Heights, IL 60139

**LIST OF EXHIBITS**

1. **Exhibit A - C: State Court Civil Lawsuit Documentation.**

   a. Exhibit A is submitted solely to demonstrate the true nature of the ongoing civil lawsuit and the specified Ad Damnum of $50,000.00 plus costs.

   **b. Additionally, Exhibit B and Exhibit C are included to highlight the Defendant's lack of transparency regarding his counterclaim for damages against Plaintiff in connection with the State Court Civil Case.**

2. **Exhibit D: Deposition Transcript excerpts from October 17, 2022, in connection with the State Court Civil Matter**, per the bankruptcy court's approval.

3. **Exhibit E: Bankruptcy Petition Schedules as they pertain to alleged false listing of Plaintiff as a creditor or not listing sale of the 2014 Freightliner Cascadia truck, in connection with the non-individual Chapter 7 petition for A.B Tofa, LLC,** per the bankruptcy court's approval.

4. **Exhibit F: 341 Meeting Transcripts,** per the bankruptcy court's approval.

5. **Exhibit G: 2004 Examination Transcript,** per the bankruptcy court's approval.

**Note: Statements made under oath in depositions, affidavits, and declarations can be used in court, provided they are pertinent to the matter being considered.**

## Federal Rule of Civil Procedure 43(c) – Evidence on a Motion

**Federal Rule of Civil Procedure 32 – Using Depositions in Court Proceedings**

**FRCP 32(a), FRCP 32(a)(1), FRCP 32(a)(1)(A), FRCP 32(a)(1)(B), FRCP 32(a)(1)(C) the use is allowed by Rule 32(a)(2) through (8).**

**Federal Rule of Evidence 801(d)(1)(A) – Exclusions from Hearsay**

**These rules support oaths, depositions, affidavits, and other sworn statements can be used in court proceedings to ensure the accuracy and reliability of the evidence presented.**

## CERTIFICATE OF SERVICE

I, Corey J. Wiggins,

☐ an attorney

-or-

☒ a non-attorney, declare under penalty of perjury under the laws of the
United States of America

certify that I served a copy of this notice and attached Objection To Defendant's
Motion To Dismiss Plaintiff's Complaint on the party listed above via email and
first-class mail, postage prepaid, on May 28, 2024, before the hour of 5:00 p.m.
from
1049 Michael Court, Unit #222, Glendale Heights, IL 60139.

_____

FILED
9/2/2020 7:34 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## CHANCERY DIVISION

| | | |
|---|---|---|
| COREY WIGGINS, | ) | |
| | ) | Case No.: 2020CH05685 |
| | ) | 10327200 |
| Plaintiff, | ) | |
| vs. | ) | Ad Damnum: Exceeds $50,000.00 |
| | ) | plus interest and costs. |
| | ) | |
| | ) | |
| ABRAHAM TOFA and A.B. TOFA, LLC, | ) | |
| An Illinois limited liability company, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

NOW COMES the Plaintiff, COREY WIGGINS (hereinafter referred to as "Plaintiff" or "WIGGINS"), by and through his attorneys, RIFKIND PATRICK LLC, and for his complaint against the Defendants, ABRAHAM TOFA and A.B. TOFA LLC (hereinafter collectively referred to as "Defendants"), upon personal information as to his own activities and upon information and belief as to the activities of others and all other matters, states the following:

### JURISDICTION AND VENUE

1. Jurisdiction is proper in this Court as the action involves a general class of cases that the Court has the inherent power to hear and determine and this Court employs original jurisdiction of all justiciable matters.

2. Venue for this action properly lies in Cook County, Illinois, pursuant to Section 2-101 of the Illinois Code of Civil Procedure because some of the events or omissions giving rise

1

to the claims alleged herein occurred in Chicago, Cook County, and the Defendants'

principal place of business is located in Cook County, Illinois.

### PARTIES

3.  Plaintiff, WIGGINS, resides in Illinois.

4.  Defendant, A.B. Tofa LLC, is a domestic Illinois limited liability company with a

    primary mailing address of 14511 Lincoln Avenue, Dolton, Illinois 60417.

5.  By information and belief, Defendant, Abraham Tofa, resides at 14511 Lincoln Avenue,

    Dolton, Illinois 60417.

### ALLEGATIONS COMMON TO ALL COUNTS

6.  Both Wiggins and Defendants work in the transportation industry.

7.  In about May of 2018, WIGGINS entered into a written contract with Defendants entitled

    the "Owner Operator Lease Agreement" hereinafter referred to as the "Contract".  See

    Exhibit A.

8.  The Contract involved Wiggins acting as an operator of a certain Freightliner Cascadia,

    identified as VIN 3AKJGLDR4DSFE3510 (the "subject vehicle") as of May 2018

    (tractor 1).

9.  On or about November 2018, under the Contract, Wiggins would provide payment to

    Defendants to lease the subject vehicle in exchange for full-time use of the subject

    vehicle Freightliner Cascadia vin number 3AKJGLD53ESFP8641 (tractor 2).

10. The Parties executed the Contract by signature.

11. Further, Wiggins and Defendants entered into a purchase agreement for the subject

    vehicle.  Cascadia vin number 3AKJGLD53ESFP8641 (tractor 2).

2

12. Wiggins was never provided a copy of the purchase agreement, amortization schedule, truth in lending, nor payment history for the subject vehicle (the "Purchase Agreement").

13. The Purchase Agreement involved payment in installments.

14. The Contract also clearly provides for a full accounting of all funds paid as well as funds due and owing.

15. Wiggins demanded an accounting of the purchase balance on several occasions from Defendants.

16. Defendants failed to give an accounting of the Purchase Agreement.

17. Further, in violation of the Contract and the Purchase Agreement, the Defendants repossessed the subject vehicle.

18. Wiggins complied with all obligations under the Purchase Agreement and the Contract.

19. Due to Defendants' repossession of the subject vehicle and other breaches, Wiggins has been damaged.

## COUNT I: BREACH OF AGREEMENT - CONTRACT

20. Wiggins realleges and restates all preceding paragraphs for this Count.

21. The Contract was valid and formed between two merchants, including offer and acceptance of the subject vehicle sale and each having experience in the transportation industry, hauling, truck purchasing and truck sales.

22. The agreement was reflected in writing by Defendants and WIGGINS. See Exhibit A.

23. Defendants acknowledged that the agreement for the purchase of the subject vehicle existed, and repudiated the agreement by repossessing the subject vehicle.

24. Plaintiff fully performed all terms and conditions under the agreement with Defendant.

3

25. Defendant informed Plaintiff that it was pleased with the transportation services that it provided on multiple occasions.

26. In breach of the agreement, Defendant has failed to tender the subject vehicle title to Plaintiff, and Plaintiff no longer has use of the subject vehicle. In fact, on June 12, 2020, the Defendants deactivated the ELD which prevented Plaintiff from working with brokers to perform his work duties. On or about July 14, 2020 the Freightliner Cascadia was repossessed illegally.

27. As a result of Defendants' multiple breaches of the agreement, Plaintiff has been damaged, including incidental and consequential expenses, and other damages.

28. Due to Defendants' multiple breaches listed *supra*, WIGGINS has been damaged monetarily and by losing ownership rights to the subject vehicle.

WHEREFORE, Plaintiff, COREY WIGGINS, requests that this Honorable Court find in its favor and against Defendants for Breach of Agreement, and award:

    A. An amount in excess of $50,000.00 in damages for payments owed and outstanding;

    B. Incidental and consequential damages;

    C. Statutory interest;

    D. Court costs; and,

    E. For such other relief the Court deems equitable and just.

## COUNT II: BREACH OF AGREEMENT - PURCHASE AGREEMENT

29. Wiggins realleges and restates all preceding paragraphs for this Count.

4

30. The Purchase Agreement was valid and formed between two merchants, including offer and acceptance of the subject vehicle sale and each having experience in the transportation industry, hauling, truck purchasing and truck sales.

31. The agreement was reflected in writing by Defendants and WIGGINS. See Exhibit A.

32. Defendants acknowledged that the agreement for the purchase of the subject vehicle existed, and repudiated the agreement by repossessing the subject vehicle.

33. Plaintiff fully performed all terms and conditions under the agreement with Defendants.

34. Defendants informed Plaintiff that it was pleased with the transportation services that it provided on multiple occasions.

35. In breach of the agreement, Defendants have failed to tender the subject vehicle title to Plaintiff, and Plaintiff no longer has use of the subject vehicle and Defendants illegally repossessed it thereto.

36. As a result of Defendants' multiple breaches of the agreement, Plaintiff has been damaged, including incidental and consequential expenses, and other damages.

37. If this court should find that the subject vehicle purchase agreement was actually a rent-to-own or lease-to-own agreement, Defendants still breached that agreement by improperly terminating the agreement, denying Plaintiff of ownership in the subject vehicle, or if all payments are counted, when more than the entire purchase price had been paid to Defendants.

38. Due to Defendants' multiple breaches listed *supra*, WIGGINS has been damaged monetarily and by losing ownership rights to the subject vehicle.

WHEREFORE, Plaintiff, COREY WIGGINS, requests that this Honorable Court find in its favor and against Defendants for Breach of Agreement, and award:

    F.  An amount in excess of $50,000.00 in damages for payments owed and outstanding;

    G.  Specific performance of delivering the subject vehicle;

    H.  Incidental and consequential damages;

    I.  Statutory interest since 2015;

    J.  Court costs; and,

    K.  For such other relief the Court deems equitable and just.

### COUNT III: UNJUST ENRICHMENT (IN THE ALTERNATIVE)

39. WIGGINS incorporates and realleges all preceding paragraphs of this Complaint described *supra* into this Count against Defendants.

40. Defendants received transportation services by WIGGINS.

41. Defendants failed to pay WIGGINS for valid transportation invoices for services agreed and performed by WIGGINS on behalf of Defendants.

42. Defendants unjustly repudiated the agreement for the sale of the subject vehicle.

43. Defendants has been unjustly enriched by its cancelling of the agreed sale of the subject vehicle after receiving compensation;

WHEREFORE, Plaintiff, COREY WIGGINS, requests that this Honorable Court find in its favor and against Defendants for Breach of Agreement, and award:

    A.  An amount in excess of $50,000.00  in damages for payments owed and outstanding;

6

B.  Incidental and consequential damages;

C.  Statutory interest

D.  Court costs; and,

E.  For such other relief the Court deems equitable and just.

\*      \*      \*

Dated: August 13, 2020                    Respectfully Submitted,

                                          COREY WIGGINS

                                          By:     _/s/ Sean P. Patrick_
                                                  Sean P. Patrick, esq.
                                                  An Attorney for Plaintiff

RIFKIND PATRICK LLC
20 West Hubbard Street
Floor 3-W
Chicago, Illinois 60654
(312) 725-4229
Attorney#: 59351
*Attorney for Plaintiff COREY WIGGINS*

**7**

RE: Owner Operator Lease Agreement

A.B. TOFA TRUCKING LLC.

14511 Lincoln Ave

Dolton, IL - 60419

Telephone #(630)340 0520

Fax # (866)477 1496

LEASE AGREEMENT Agreement No _ABT-    -2018

AGREEMENT made this 23rd day of May, 2018, by and between

AB Tofa Llc , hereinafter referred to as LESSEE, located at

14511 Lincoln Ave Dolton, IL 60419 and Corey Wiggins,

hereinafter referred to as LESSOR , located at 1049 Micheal Court, unit # 222

Glendale Heights, IL 60139.

WITNESSES

(1) LESSEE is a motor contract carrier of property authorized by the Federal Highway Administration by Permit No. MC #841150 and US DOT #2429901 to provide transportation of property under contract with shippers and receivers of general commodities, and (2) LESSOR is the owner of the tractor and trailer equipment described in Appendix "A" and is duly authorized and empowered to execute this agreement.

NOW THEREFORE, in consideration of the representation made herein, the parties agree as follows:

(1) The LESSEE hereby leases the equipment and services of LESSOR, owned and described in Appendix "A". LESSOR certifies that equipment subject to this lease meets U.S. Department of Transportation (DOT) safety requirements and standards, and that LESSEE shall inspect such equipment and shall determine that such requirements and standards have been met at the time of execution of this lease.

(2) Possession of equipment will be transferred under the terms of this lease from LESSOR to LESSEE beginning at the date and time of execution of this agreement and continue until cancellation is served by either LESSEE or LESSOR in writing. At such

FILED DATE: 10/8/2021 12:19 PM   2020CH05685



EXHIBIT

A

FILED DATE: 10/8/2021 12:19 PM    2020CH05685

time as this lease agreement is terminated, LESSOR agrees to furnish LESSEE with a written receipt to show that LESSOR retakes possession of the equipment.

(3) During the tenure of this lease agreement, the LESSEE shall have exclusive possession, control, and use of the equipment, and shall assume complete responsibility for the operation of the equipment for the duration of the lease. LESSOR agrees to properly identify equipment with the Federal Highway Administration's "MC" number and the name of LESSEE.

(4) LESSOR agrees to comply with all safety regulations required by the Department of Transportation and the various States in which operations are conducted.

(5) In consideration for the use of the equipment and services of LESSOR, the LESSEE agrees to compensate LESSOR in the amount of ___90__% of gross revenues for each trip ticket. LESSEE will provide all permitting necessary and will pay all fuel taxes. LESSOR has a right to examine LESSEE's documents containing information for determining charges billed to the shipper.

(6) Payment shall be made within 15 days after submission of the necessary delivery documents and other paperwork concerning a trip in the service of LESSEE. Delivery documents and paperwork concerning a trip required before the LESSOR can receive payment is defined as driver's log books required by the Department of Transportation, and those documents necessary for LESSEE to secure payment from the shipper. LESSEE may require the submission of additional documents by the LESSOR but not as a prerequisite to payment. Payment to the LESSOR shall not be made contingent upon submission of a bill of lading to which no exceptions have been taken. The LESSOR shall not set time limits for the submission by the LESSOR of required delivery documents and other paperwork. LESSOR must complete all trip tickets and reports. Each trip report must be turned in before the next trip is assigned.

(7) The LESSEE has a legal obligation and the responsibility to maintain liability and cargo insurance coverage for the protection of the public as required by Federal Highway Administration regulations under 49 U.S.C. 10927, as amended by Public Law 104-88. All insurance cost for the operation of LESSOR's equipment while in the service of LESSEE shall be paid by LESSOR. If the cost of the insurance is initially paid by LESSEE, such costs will be charged-back in full to LESSOR.

(8) The LESSOR is responsible for providing all fuel, meals and lodging, repairs and maintenance to tractor and trailer, tolls, ferries, detention, etc. necessary in the operation of equipment while in the service of LESSEE. If it becomes necessary for LESSEE to pay or provide any item that LESSOR is responsible for, the LESSEE has the right to deduct such cost from the LESSOR's compensation at the time of payment or settlement. If such deduction becomes necessary, then LESSEE will provide LESSOR

FILED DATE: 10/8/2021 12:19 PM   2020CH05685

with a full explanation and/or documentation as to how the amount of each item is to be computed. The LESSOR is not required to purchase or rent any products, equipment, or services from LESSEE as a condition of entering into this lease agreement.

(9) It is the duty of the LESSOR to properly determine the condition of the freight at the time such freight is picked-up from the shipper, and a further duty to transport the shipment to its destination in as nearly that same condition as when it was picked-up. The LESSOR will inspect all shipments at the time of loading and mark any exceptions or conditions on the bill of lading or receipt. At the destination, the LESSOR will again inspect the freight with the consignee and mark on the delivery receipt any exceptions to the condition or damages to the shipment that occurred during transit. Delivery receipts will be turned in to the LESSEE as part of the documentation required for payment. The LESSEE has a right to deduct for damages of freight in transit caused by LESSOR and not reimbursed by insurance. The LESSEE will provide a written explanation and itemization of any deductions for cargo or property damage made from compensation to LESSOR.

(10) The DRIVER is responsible for loading and unloading freight to and from the trailer, unless proper notations are made on the bill of lading that the driver is responsible. Except when the violation results from the acts or omissions of the LESSOR, the LESSEE shall assume the risks and costs of fines for overweight and oversize trailers when the trailers are pre-loaded, sealed, or the load is containerized, or when the trailer or lading is otherwise outside the LESSOR's control, and for improperly permitted over-dimension and overweight loads and LESSEE shall reimburse LESSOR for any fines paid by the LESSOR.

(11) Escrow funds or moneys placed on deposit with LESSEE by LESSOR are not required under the terms of this agreement.

(12) It is agreed that the services of LESSOR under the terms of this lease agreement is that of an independent contractor and that no "employee-employer" relationship exists between LESSOR and LESSEE. LESSOR is therefore responsible for providing his own workmen's compensation insurance, employment and income taxes, etc. Further, any drivers or employees of LESSOR are the complete responsibility of the LESSOR.

(13) This lease agreement may be canceled upon written notice by either LESSOR or LESSEE. It is agreed that any loads in transit will be delivered prior to cancellation and all required paperwork will be turned in prior to final settlement. Any costs incurred by LESSEE to complete the delivery of a load in transit will be charged to the LESSOR. The LESSOR agrees to remove identification signs or devices from the equipment upon the termination of the lease and return such signs or devices to the LESSEE. If

FILED DATE: 10/8/2021 12:19 PM  2020CH05685

Identification has been painted directly on the equipment, then LESSOR agrees to furnish a photograph of both sides of the equipment showing identification has been removed or painted over. Failure to furnish evidence of the removal of identification from the equipment will result in the withholding of the final settlement.

(14) This AGREEMENT is to become effective 5/23/2018 and shall remain in effect for a period of one year from such date, and from year to year thereafter, subject to the right of either party hereto to cancel or terminate the AGREEMENT at any time with written notice of one party or the other.

IN WITNESS WHEREOF, this agreement has been entered into and executed by duly authorized representatives of LESSOR and LESSEE.

_____
(LESSEE)          5/29/18

_____
(LESSOR)          05/29/2018

FILED DATE: 10/8/2021 12:19 PM   2020CH05685



## AB TOFA, LLC

## VEHICLE PURCHASE AGREEMENT

I, **Corey J. Wiggins**, request AB TOFA, LLC to finance a *"2014 FREIGHTLINER CASCADIA", Vehicle Identification Number (V. I. N.): 3AKIGLD53 ESFP8641*. This vehicle purchase price is **$47,328.00**. This vehicle has a DD15 engine, a 13 spd transmission with **609,977 miles** and exterior is white.

I, **Corey J. Wiggins**, agree to AB TOFA, LLC to make monthly withdrawals from future earnings to cover monthly payments of vehicle, until the last and final payment is completed, or full balance owed is paid in full. This loan, title and/or ownership will not be transferred to Mr. Wiggins until final payments are complete or full balance owed is paid in full.

This vehicle will operate solely under **AB TOFA, LLC** authority for the duration of the loan, until last and final payment is completed, or full balance owed is paid in full. Any change in operating vehicle outside of **AB TOFA, LLC** authority, will have to be written, given permission for vehicle to operate outside of **AB TOFA, LLC** authority.

**I, Corey J. Wiggins, understand I am responsible for all repairs, maintenance and ensuring the vehicle is compliant with all *Department of Transportation (DOT)* and *Federal Motor Carrier Safety Administration (FMCSA)* regulations and requirements while operating vehicle under AB TOFA, LLC authority.**

**COREY WIGGINS**

12/01/2018

**DATE**

State of Illinois

County of _Cook_

Signed and attested before me on _12-1-18_ (Date) by

_COREY J. WIGGINS_ (name/s of person/s)

_Laurice Matheny_ (Signature of Notary Public)

"OFFICIAL SEAL"
LAURICE MATHENY
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 10/26/19

Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

# Exhibit B

FILED
10/8/2021 12:19 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2020CH05685

15136807

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS, CHANCERY DIVISION

| | | |
|---|---|---|
| COREY WIGGINS, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 2020CH05685 |
| | ) | |
| v. | ) | |
| | ) | |
| ABRAHAM TOFA and A.B TOFA, LLC, | ) | |
| An Illinois limited liability company, | ) | |
| | ) | |
| Defendants. | ) | |

### DEFENDANT, ABRAHAM TOFA AND A.B TOFA, LLC'S, ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT, AND COUNTERCLAIMS FOR DAMAGES AGAINST PLAINTIFF

NOW COME Defendants, ABRAHAM TOFA and A.B TOFA, LLC, by and through their attorneys, ARNETT LAW GROUP, LLC, and for their Answer, Affirmative Defenses, and Counterclaims to Plaintiff, COREY WIGGINS', Complaint, state as follows:

### JURISDICTION AND VENUE

1.      Jurisdiction is proper in this Court as the action involves a general class of cases that the Court has the inherent power to hear and determine and this Court employs original jurisdiction of all justiciable matters.

**ANSWER:**   Defendants admit that jurisdiction appears proper in the Circuit Court of Cook County.

2.      Venue for this action properly lies in Cook County, Illinois, pursuant to Section 2-101 of the Illinois Code for Civil Procedure because some of the events or omissions giving rise to the claims alleged herein occurred in Chicago, Cook County, and the Defendants' principal place of business is located in Cook County, Illinois.

**ANSWER:**   Defendants admit that venue appears proper in the Circuit Court of Cook County.

1

FILED DATE: 10/8/2021 12:19 PM   2020CH05685

## PARTIES

3.    Plaintiff, WIGGINS, resides in Illinois.

**ANSWER:**    Defendants admit to the allegations contained in Paragraph 3.

4.    Defendant, A.B Tofa LLC, is a domestic Illinois limited liability company with a primary mailing address of 14511 Lincoln Avenue, Dolton, Illinois 60417.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 4.

5.    By information and belief, Defendant, Abraham Tofa, resides at 14511 Lincoln Avenue, Dolton, Illinois 60417.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 5.

### ALLEGATIONS COMMON TO ALL COUNTS

6.    Both Wiggins and Defendants work in the transportation industry.

**ANSWER:**    Defendants admit that Abraham Tofa owns and operates A.B. Tofa, LLC, a duly licensed motor carrier.

7.    In about May of 2018, WIGGINS entered into a written contract with Defendants entitled the "Owner Operator Lease Agreement" hereinafter referred to as the "Contract". See Exhibit A.

**ANSWER:**    Defendants admit only to the existence and execution of the "Owner Operator Lease Agreement" but deny that the Owner Operator Lease Agreement has any relevance to this case, as the Owner Operator Lease Agreement was merely an independent contractor agreement and in no way contemplated, or intended to contemplate, any vehicle purchase or lease to own agreement between the parties.

8.    The Contract involved Wiggins acting as an operator of a certain Freightliner Cascadia, identified as VIN 3AKJGLDR4DSFE3510 AS OF May 2018 (tractor 1).

FILED DATE: 10/8/2021 12:19 PM   2020CH05685

**ANSWER:** Defendants admit that at the onset of Plaintiff's employment, via the Owner Operator Lease Agreement, Plaintiff owned and operated his own vehicle to be used in connection with Plaintiff's job duties, but Defendants lack sufficient knowledge to admit or deny the VIN alleged in Paragraph 8.

9.      On or about November 2018, under the contract, Wiggins would provide payment to Defendants to lease the subject vehicle in exchange for full-time use of the subject vehicle Freightliner Cascadia vin number 3AKJGLD53ESFP8641 (tractor 2).

**ANSWER:** Defendants expressly deny the allegations contained in Paragraph 9, as the Owner Operator Lease Agreement contained no such language, was merely an independent contractor agreement, and in no way contemplated, or intended to contemplate, any vehicle purchase or lease to own agreement between the parties.

10.     The parties executed the Contract by signature.

**ANSWER:** Defendants admit only to the existence and execution of the "Owner Operator Lease Agreement" but deny that the Owner Operator Lease Agreement has any relevance to this case, as the Owner Operator Lease Agreement was merely an independent contractor agreement and in no way contemplated, or intended to contemplate, any vehicle purchase or lease to own agreement between the parties.

11.     Further, Wiggins and Defendants entered into a purchase agreement for the subject vehicle, Cascadia vin number 3AKJGLD53ESFP8641 (tractor 2).

**ANSWER:** Defendants admit that the parties entered into the "Vehicle Purchase Agreement" on December 1, 2018, six (6) months after the onset of Plaintiff's employment, via the Owner Operator Lease Agreement, and after Plaintiff's own vehicle was repossessed by the bank.

3

FILED DATE: 10/8/2021 12:19 PM   2020CH05685

12.    Wiggins was never provided a copy of the purchase agreement, amortization schedule, truth in lending, nor payment history for the subject vehicle (the "Purchase Agreement").

**ANSWER:** Defendants deny the allegations contained in Paragraph 12.

13.    The Purchase agreement involved payment in installments.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 13, as Plaintiff is attempting to conflate two separate and distinct contracts. The language contained in each contract speaks for itself.

14.    The Contract also clearly provides for a full accounting of all funds paid as well as funds due and owing.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 14, as Plaintiff is attempting to conflate two separate and distinct contracts and because no such language is contained in the Vehicle Purchase Agreement. The language contained in each contract speaks for itself.

15.    Wiggins demanded an accounting of the purchase balance on several occasions from Defendants.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 15.

16.    Defendants failed to give an accounting of the Purchase Agreement.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 16, as each and every payment withdrawal was clearly stated within Plaintiff's pay stubs, which Plaintiff received weekly.

17.    Further, in violation of the Contract and the Purchase Agreement, the Defendants repossessed the subject vehicle.

4

FILED DATE: 10/8/2021 12:19 PM   2020CH05685

**ANSWER:**   Defendants deny the allegations contained in Paragraph 17, including Plaintiff's attempt to conflate two separate and distinct contracts.

18.   Wiggins complied with all obligations under the Purchase Agreement and the Contract.

**ANSWER:**   Defendants deny the allegations contained in Paragraph 18, including Plaintiff's attempt to conflate two separate and distinct contracts.

19.   Due to Defendants' repossession of the subject vehicle and other breaches, Wiggins has been damaged.

**ANSWER:**   Defendants deny the allegations contained in Paragraph 19.

## COUNT I: BREACH OF AGREEMENT - CONTRACT

20.   Wiggins realleges and restates all preceding paragraphs for this Count.

**ANSWER:**   Defendants, in response to Paragraph 20, reassert, as though set forth verbatim herein, each and every response it has set forth above in response to Paragraphs 1-19.

21.   The Contract was valid and formed between two merchants, including offer and acceptance of the subject vehicle sale and each having experience in the transportation industry, hauling, truck purchasing and truck sales.

**ANSWER:**   Defendants deny the allegations contained in Paragraph 21, as Plaintiff is attempting to conflate two separate and distinct contracts. The Owner Operator Lease Agreement was merely an independent contractor agreement, containing standard independent contractor language used within the trucking industry, whereas the Vehicle Purchase Agreement was entered into six months later, after Plaintiff's own vehicle was repossessed.

22.   The agreement was reflected in writing by Defendants and WIGGINS. See Exhibit A.

5

FILED DATE: 10/8/2021 12:19 PM   2020CH05685

**ANSWER:**   Defendants deny the allegations contained in Paragraph 22, as Plaintiff is attempting to conflate two separate and distinct contracts.

23.    Defendants acknowledged that the agreement for the purchase of the subject vehicle existed, and repudiated, the agreement by repossessing the subject vehicle.

**ANSWER:**   Defendants deny the allegations contained in Paragraph 23, including Plaintiff's attempt to conflate two separate and distinct contracts.

24.    Plaintiff fully performed all terms and conditions under the agreement with Defendant.

**ANSWER:**   Defendants deny the allegations contained in Paragraph 24, including Plaintiff's attempt to conflate two separate and distinct contracts and because Plaintiff failed to perform the terms and conditions contained in either the Owner Operator Lease Agreement or the Vehicle Purchase Agreement.

25.    Defendant informed Plaintiff that it was pleased with the transportation services that it provided on multiple occasions.

**ANSWER:**   Defendants deny the allegations contained in Paragraph 25, as Defendants notified Plaintiff on multiple occasions that Plaintiff was not performing his obligations under the Vehicle Purchase Agreement and was not bringing in enough revenue to cover the costs associated with the Vehicle Purchase Agreement, requiring Defendants to cover such costs.

26.    In breach of the agreement, Defendant has failed to tender the subject vehicle title to Plaintiff, and Plaintiff no longer has use of the subject vehicle. In fact, on June 12, 2020, the Defendants deactivated the ELD which prevented Plaintiff from working with brokers to perform his work duties. On or about July 14, 2020 the Freightliner Cascadia was repossessed illegally.

**ANSWER:**   Defendants deny the allegations as stated in Paragraph 26.

6

FILED DATE: 10/8/2021 12:19 PM   2020CH05685

27.     As a result of Defendants' multiple breaches of the agreement, Plaintiff has been damaged, including incidental and consequential expenses, and other damages.

**ANSWER:**   Defendants deny the allegations contained in Paragraph 27, including Plaintiff's attempt to conflate two separate and distinct contracts.

28.     Due to Defendants' multiple breaches, *supra,* WIGGINS has been damaged monetarily and by losing ownership rights to the subject vehicle.

**ANSWER:**   Defendants deny the allegations contained in Paragraph 28, including Plaintiff's attempt to conflate two separate and distinct contracts.

### COUNT II: BREACH OF AGREEMENT – PURCHASE AGREEMENT

29.     Wiggins realleges and restates all preceding paragraphs for this count.

**ANSWER:**   Defendants, in response to Paragraph 29, reassert, as though set forth verbatim herein, each and every response it has set forth above in response to Paragraphs 1-28.

30.     The Purchase Agreement was valid and formed between two merchants, including offer and acceptance of the subject vehicle sale and each having experience in the transportation industry, hauling, truck purchasing, and truck sales.

**ANSWER:**   Defendants admit only to the existence and execution of the Vehicle Purchase Agreement, the language of which speaks for itself.

31.     The agreement was reflected in writing by Defendants and WIGGINS. See Exhibit A.

**ANSWER:**   Defendants deny the allegations contained in Paragraph 31, as Plaintiff is attempting to conflate two separate and distinct contracts. The language contained in each contract speaks for itself.

FILED DATE: 10/8/2021 12:19 PM   2020CH05685

32.    Defendants acknowledged that the agreement for the purchase of the subject vehicle existed, and repudiated the agreement by repossessing the subject vehicle.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 32, as Plaintiff is attempting to conflate two separate and distinct contracts. The language contained in each contract speaks for itself.

33.    Plaintiff fully performed all terms and conditions under the agreement with Defendants.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 33, including Plaintiff's attempt to conflate two separate and distinct contracts and because Plaintiff failed to perform the terms and conditions contained in either the Owner Operator Lease Agreement or the Vehicle Purchase Agreement.

34.    Defendants informed Plaintiff that it was pleased with the transportation services that it provided on multiple occasions.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 34, as Defendants notified Plaintiff on multiple occasions that Plaintiff was not performing his obligations under the Vehicle Purchase Agreement and was not bringing in enough revenue to cover the costs associated with the Vehicle Purchase Agreement, requiring Defendants to cover such costs.

35.    In breach of the agreement, Defendants have failed to tender the subject vehicle title to Plaintiff, and Plaintiff no longer has use of the subject vehicle and Defendants illegally repossessed it thereto.

**ANSWER:**    Defendants deny the allegations as stated in Paragraph 35, including Plaintiff's attempt to conflate two separate and distinct contracts.

8

FILED DATE: 10/8/2021 12:19 PM    2020CH05685

36.    As a result of defendants' multiple breaches of this agreement, Plaintiff has been damaged, including incidental and consequential expenses, and other damages.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 36, including Plaintiff's attempt to conflate two separate and distinct contracts.

37.    If this court should find that the subject vehicle purchase agreement was actually a rent-to-own or lease-to-own agreement, Defendants still breached that agreement by improperly terminating the agreement, denying Plaintiff of ownership in the subject vehicle, or if all payments are counted, when more than the entire purchase price had been paid to Defendants.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 37, as the language contained in the Vehicle Purchase Agreement speaks for itself.

38.    Due to Defendants' multiple breaches listed *supra,* WIGGINS has been damaged monetarily and by losing ownership rights to the subject vehicle.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 38, including Plaintiff's attempt to conflate two separate and distinct contracts.

## COUNT III: UNJUST ENRICHMENT (IN THE ALTERNATIVE)

39.    WIGGINS incorporates and realleges all preceding paragraphs of this complaint described *supra* into this Count against Defendants.

**ANSWER:**    Defendants, in response to Paragraph 39, reassert, as though set forth verbatim herein, each and every response it has set forth above in response to Paragraphs 1-38.

40.    Defendants received transportation services by WIGGINS.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 40, as Plaintiff stopped performing transportation services that would cover the costs associated with the Vehicle Purchase Agreement and stopped providing Bills of Lading to Defendants.

FILED DATE: 10/8/2021 12:19 PM   2020CH05685

41.     Defendants failed to pay WIGGINS for valid transportation invoices for services agreed and performed by WIGGINS on behalf of Defendants.

**ANSWER:**   Defendants expressly deny the allegations contained in Paragraph 41, as Defendants always and consistently paid Plaintiff for each and every load he transported, despite losing money because Plaintiff was not working enough to cover the costs associated with the Vehicle Purchase Agreement.

42.     Defendants unjustly repudiated the agreement for the sale of the subject vehicle.

**ANSWER:**   Defendants deny the allegations contained in Paragraph 42, including Plaintiff's attempt to conflate two separate and distinct contracts.

43.     Defendants has been unjustly enriched by its cancelling of the agreed sale of the subject vehicle after receiving compensation.

**ANSWER:**   Defendants deny the allegations contained in Paragraph 43.

WHEREFORE, Defendants ABRAHAM TOFA and A.B TOFA, LLC, pray that this Court dismiss Plaintiff's Complaint with prejudice, and for any other relief this Court deems equitable and just.

10

FILED DATE: 10/8/2021 12:19 PM    2020CH05685

## AFFIRMATIVE DEFENSES

NOW COME Defendants, ABRAHAM TOFA and A.B TOFA, LLC, by and through their attorneys ARNETT LAW GROUP, LLC, and by way of their Affirmative Defenses against Plaintiff, COREY WIGGINS, state as follows:

### I. Plaintiff's Non-Performance

1.      Plaintiff filed his Complaint against Defendants on September 2, 2020, seeking recovery for damages allegedly sustained as a result of Defendants' alleged breach of contract.

2.      Defendants have denied all material allegations against them in their Answer to Plaintiff's Complaint.

3.      On May 29, 2018, Plaintiff and Defendants entered into an Owner Operator Lease Agreement that formed the basis of Plaintiff's employment with A.B. Tofa, LLC, whereby Plaintiff would use his own vehicle (hereinafter "Corey's Vehicle") to perform transportation services on behalf of Defendants.

4.      On December 1, 2018, after Corey's Vehicle was repossessed by his bank, Plaintiff and Defendants entered into a Vehicle Purchase Agreement, whereby Defendants would finance a 2014 FREIGHLINER CASCADIA, VIN 3AKIGLD53 ESFP8641 (hereinafter the "New Vehicle") for Plaintiff's use in connection with his job duties as a truck driver.

5.      Pursuant to the Vehicle Purchase Agreement, Defendants were to make withdrawals from Plaintiff's earnings in order to cover the monthly payments and insurance costs for the New Vehicle, and Defendants were to maintain title and ownership of the New Vehicle until the full balance owed for the New Vehicle was paid in full.

6.      After the New Vehicle was purchased, Plaintiff began transporting significantly less loads, with less frequency, than he did using Corey's Vehicle.

11

FILED DATE: 10/8/2021 12:19 PM   2020CH05685

7.     In addition, Plaintiff consistently failed to provide Defendants with Bills of Lading, as required under Paragraph 6 of the Owner Operator Lease Agreement, which prevented Defendants from obtaining payment from its customers and/or shippers.

8.     Therefore, Plaintiff was not bringing in enough revenue to cover the monthly payments and insurance costs for the New Vehicle, forcing Defendants to cover such costs.

9.     Despite actively losing money, Defendants consistently paid Plaintiff for the few loads that he did transport.

10.    As a result of Plaintiff's non-performance, the terms of the Vehicle Purchase Agreement were never met, the New Vehicle was never paid for by Plaintiff, and Defendants were the rightful owner of the New Vehicle.

11.    In addition, as a result of Plaintiff's non-performance, Defendants incurred $8,432.00 in monthly payments, insurance payments, and repair costs relative to the New Vehicle that Plaintiff was responsible for but failed to cover and/or otherwise pay.

12.    Further, as a result of Plaintiff's non-performance, Defendants incurred $12,193.26 in costs to recover and repair damage to the New Vehicle that Plaintiff caused, was responsible for, but did pay for.

WHEREFORE, Defendants, ABRAHAM TOFA and A.B TOFA, LLC, pray that if judgment is awarded to Plaintiff, which Defendants deny, that any damages are barred as they are solely attributable Plaintiff's own non-performance and breach of contract, and for any other relief that this Court deems equitable and just.

## II. No Unjust Enrichment

1.     Plaintiff filed his Complaint against Defendants on September 2, 2020, seeking recovery for damage allegedly sustained as a result of Defendants' alleged unjust enrichment.

12

FILED DATE: 10/8/2021 12:19 PM    2020CH05685

2.    Defendants have denied all material allegations against them in their Answer to Plaintiff's Complaint.

3.    On May 29, 2018, Plaintiff and Defendants entered into an Owner Operator Lease Agreement that formed the basis of Plaintiff's employment with A.B. Tofa, LLC, whereby Plaintiff would use his own vehicle (hereinafter "Corey's Vehicle") to perform transportation services on behalf of Defendants.

4.    On December 1, 2018, after Corey's Vehicle was repossessed by his bank, Plaintiff and Defendants entered into a Vehicle Purchase Agreement, whereby Defendants would finance a 2014 FREIGHLINER CASCADIA, VIN 3AKIGLD53 ESFP8641 (hereinafter the "New Vehicle") for Plaintiff's use in connection with his job duties as a truck driver.

5.    Pursuant to the Vehicle Purchase Agreement, Defendants were to make withdrawals from Plaintiff's earnings in order to cover the monthly payments and insurance costs for the New Vehicle, and Defendants were to maintain title and ownership of the New Vehicle until the full balance owed for the New Vehicle was paid in full.

6.    After the New Vehicle was purchased, Plaintiff began transporting significantly less loads, with less frequency, than he did using Corey's Vehicle.

7.    In addition, Plaintiff consistently failed to provide Defendants with Bills of Lading, in violation of Paragraph 6 of the Owner Operator Lease Agreement, which prevented Defendants from obtaining payment from its customers and/or shippers.

8.    Therefore, Plaintiff was not bringing in enough revenue to cover the monthly payments and insurance costs for the New Vehicle, forcing Defendants to cover such costs.

9.    Despite actively losing money, Defendants consistently paid Plaintiff for the few loads that he did transport.

FILED DATE: 10/8/2021 12:19 PM 2020CH05685

10. In addition, as a result of Plaintiff's non-performance, Defendants incurred $8,432.00 in monthly payments, insurance payments, and repair costs relative to the New Vehicle that Plaintiff was responsible for but failed to cover and/or otherwise pay.

11. Further, as a result of Plaintiff's non-performance, Defendants incurred $12,193.26 in costs to recover and repair damage to the New Vehicle that Plaintiff caused, was responsible for, but did pay for.

12. Therefore, Plaintiff's claims of unjust enrichment have no basis, and, in fact, it is Plaintiff who has been unjustly enriched.

WHEREFORE, Defendants, ABRAHAM TOFA and A.B TOFA, LLC, pray that if judgment is awarded to Plaintiff, which Defendants deny, that any damages are barred as Defendants have not been unjustly enriched and, in fact, have incurred $20,000 in damages as a result of Plaintiff's own non-performance and breach of contract, and for any other relief that this Court deems equitable and just.

### III. Two Separate and Distinct Contracts

1. Plaintiff filed his Complaint against Defendants on September 2, 2020, seeking recovery for damages allegedly sustained as a result of Defendant's alleged breach of contract and unjust enrichment.

2. Defendants have denied all material allegations against them in their Answer to Plaintiff's Complaint.

3. On May 29, 2018, Plaintiff and Defendants entered into an Owner Operator Lease Agreement that formed the basis of Plaintiff's employment with A.B. Tofa, LLC as an independent contractor.

4. At no point in time did the Owner Operator Lease Agreement contemplate, or intend to contemplate, any vehicle purchase or lease to own agreement between the parties.

14

FILED DATE: 10/8/2021 12:19 PM    2020CH05685

5.      At the time the Owner Operator Lease Agreement was entered into, Plaintiff owned his own vehicle for use in connection with his job duties as a truck driver (herein after "Corey's Vehicle"), and, thus, there was no need for the parties to even consider purchasing and/or leasing a separate, new vehicle at that time.

6.      In fact, the Owner Operator Lease Agreement is a standard independent contractor agreement that Defendants have used with multiple Owner Operators, all of whom have owned their own vehicles for use in connection with their job duties as truck drivers.

7.      Moreover, the Owner Operator Lease Agreement contains standard terms of art and language frequently used in the trucking industry for the hiring of independent contractors, such as "lease," "lessor," and "lessee."

8.      Prior to December 1, 2018, Corey's Vehicle was repossessed by his bank.

9.      On December 1, 2018, after Corey's Vehicle was repossessed by his bank, Plaintiff and Defendants entered into a Vehicle Purchase Agreement.

10.     As a result, the Vehicle Purchase Agreement stands alone, as it is the sole contract agreed to by the parties in relation to the purchase and subsequent lease of the 2014 FREIGHLINER CASCADIA, VIN 3AKIGLD53 ESFP8641 (herein after the "New Vehicle").

11.     Therefore, the Owner Operator Lease Agreement contains no language relative to the purchase, lease or ownership of the New Vehicle and, further, does not dictate the relationship, rights, or remedies of either party relative to the New Vehicle.

WHEREFORE, Defendants, ABRAHAM TOFA and A.B TOFA, LLC, pray that if judgment is awarded to Plaintiff, which Defendants deny, that any damages are barred as Plaintiff alleged that Defendants breached a contract that has no relevance to Plaintiff's alleged damages, and for any other relief that this Court deems equitable and just.

15

# EXHIBIT C

## DEFENDANTS' COUNTERCLAIMS AGAINST PLAINTIFF

NOW COME Defendants/Counter-Plaintiffs, ABRAHAM TOFA and A.B TOFA, LLC (herein after "TOFA"), by and through their attorneys ARNETT LAW GROUP, LLC, and for their Counterclaims Against Plaintiff/Counter-Defendants, COREY WIGGINS (herein after "WIGGINS"), state as follows:

### COUNT I – BREACH OF CONTRACT

1.    On May 29, 2018, WIGGINS and TOFA entered into an Owner Operator Lease Agreement that formed the basis of WIGGINS' employment with A.B. Tofa, LLC as an independent contractor, whereby WIGGINS would use his own vehicle (hereinafter "Corey's Vehicle") to perform transportation services on behalf of TOFA. (See Owner Operator Lease Agreement, Exhibit "A")

2.    The Owner Operator Lease Agreement was a standard independent contractor agreement that did not contemplate, nor intended to contemplate, any vehicle purchase or lease to own agreement between the parties. (Ex. A).

3.    As part of WIGGINS' employment, TOFA authorized WIGGINS to access private load boards and to transport loads under A.B. Tofa, LLC's DOT and MC numbers.

4.    Accordingly, TOFA never directed or assigned loads to WIGGINS and, thus, WIGGINS had the autonomy to pick and choose which loads to transport and the number of loads he wanted transport within a given month.

5.    Through the summer of 2018, WIGGINS was a hard-working driver who appeared committed to A.B. Tofa, LLC and transported between four to five loads each month, generating sustainable revenue for TOFA.

FILED DATE: 10/8/2021 12:19 PM    2020CH05685

16

FILED DATE: 10/8/2021 12:19 PM  2020CH05685

6.    In addition, through the summer of 2018, WIGGINS consistently adhered to Paragraph 6 of the Owner Operator Lease Agreement by providing TOFA with a Bill of Lading for each load that he transported, which is a "delivery document" necessary for TOFA to obtain payment from their customers. (Ex. A).

7.    Prior to December 1, 2018, Corey's Vehicle was repossessed by the bank and, thus, WIGGINS was unable to continue working as a driver.

8.    On December 1, 2018, after Corey's Vehicle was repossessed by the bank, WIGGINS and TOFA entered into a Vehicle Purchase Agreement, whereby Tofa would finance a 2014 FREIGHLINER CASCADIA, VIN 3AKIGLD53 ESFP8641 (hereinafter the "New Vehicle"), so that WIGGINS could remain employed. (See Vehicle Purchase Agreement, Exhibit "B").

9.    Pursuant to the Vehicle Purchase Agreement, TOFA was to make withdrawals from WIGGINS' earnings in order to cover the monthly payments and insurance costs for the New Vehicle. (Ex. B).

10.    Pursuant to the Vehicle Purchase Agreement, TOFA was to maintain title and ownership of the New Vehicle, until the full balance owed for the New Vehicle was paid in full by WIGGINS. (Ex. B).

11.    Based on calculations done by both parties, it was expected that WIGGINS would generate enough revenue to pay for the New Vehicle in full after about five (5) years; however, WIGGINS was permitted to pay off the New Vehicle sooner, if he chose to do so. (Ex. A).

12.    As a natural obligation and expectation under the Vehicle Purchase Agreement, WIGGINS was to transport enough loads, and to generate enough revenue, to cover the monthly

17

FILED DATE: 10/8/2021 12:19 PM   2020CH05685

payments and insurance costs for the New Vehicle, just as he had previously done using Corey's Vehicle.

13.     In performance of the Vehicle Purchase Agreement, TOFA purchased the New Vehicle for $47,434.28, began financing the New Vehicle, and tendered the New Vehicle to WIGGINS, so that WIGGINS could continue to work.

14.     Pursuant to the Vehicle Purchase Agreement, TOFA deducted $1,184.00 from WIGGINS' earnings each month to cover the monthly payments and insurance costs for the New Vehicle. (See December 14, 2018 Paid Receipt, Exhibit "C").

15.     Pursuant to the Vehicle Purchase Agreement, TOFA also deducted from WIGGINS' earnings each month any additional expenses that TOFA was responsible for, such as repair costs and insurance payments. (See Ex. C).

16.     Each and every such deduction was clearly stated on each of WIGGINS' paystubs, and any expenses that were not covered by the revenue that WIGGINS generated was carried over to WIGGINS' subsequent paystubs.

17.     For about six (6) months, WIGGINS fulfilled his end of the Vehicle Purchase Agreement and generated enough revenue to pay for the monthly expenses of the New Vehicle.

18.     WIGGINS then began transporting fewer loads and with less frequency, thereby failing to generate the agreed-upon and necessary revenue to pay the monthly expenses of the New Vehicle, forcing TOFA to cover such expenses.

19.     In addition, when he did transport loads, WIGGINS consistently failed to provide TOFA with Bills of Lading, in breach of Paragraph 6 of the Owner Operator Lease Agreement, which prevented TOFA from obtaining payment from his customers. (Ex. A).

18

FILED DATE: 10/8/2021 12:19 PM   2020CH05685

20.    As a result, and in breach of the Vehicle Purchase Agreement, WIGGINS failed to generate any revenue, let alone enough revenue to cover the monthly expenses for the New Vehicle, thereby forcing TOFA to cover such costs.

21.    Despite actively losing money, TOFA consistently paid WIGGINS, in full, for the few loads that he did transport, even when WIGGINS failed to provide Bills of Lading to TOFA for those loads and even when TOFA covered the New Vehicle's expenses that WIGGINS was responsible for.

22.    In fact, at one point, WIGGINS was so callous that he expressed to TOFA that he did not want to give TOFA any Bills of Lading because he preferred for the brokers to keep the money that TOFA was owed.

23.    On or about June 1, 2020, after numerous, futile attempts to obtain Bills of Lading from WIGGINS, Defendant rescinded its authority given to WIGGINS and instructed WIGGINS to stop using A.B. Tofa LLC's DOT and MC number to access the load boards and transport loads.

24.    At that time, WIGGINS disregarded TOFA's communications and continued to use A.B. Tofa LLC's DOT and MC number to access the load boards and transport loads, all while refusing to provide Bills of Lading to TOFA.

25.    In response, TOFA attempted to intervene by disconnecting the ELD device located within the vehicle; however, WIGGINS continued his pattern of transporting loads using TOFA's DOT and MC number, without TOFA's authority and without providing any Bills of Lading.

26.    At that point, TOFA intervened by contacting a broker and instructing the broker to not release a load to WIGGINS that WIGGINS was attempting to transport under A.B. Tofa LLC's DOT and MC number.

FILED DATE: 10/8/2021 12:19 PM    2020CH05685

27.     On June 23, 2020, WIGGINS terminated the Owner Operator Lease Agreement in writing and stopped communicating with TOFA; however, WIGGINS did not return the New Vehicle to TOFA. (See Termination Letter, Exhibit "D").

28.     At that time, WIGGINS was operating the New Vehicle without TOFA's authority and without any communications to or with TOFA.

29.     As a result, WIGGINS wrongfully possessed and operated the New Vehicle, which was registered to TOFA, being paid for by TOFA, and that displayed TOFA's placards, DOT number, M.C. number, company name, and branding.

30.     On or about July 3, 2020, The Dolton Police Department took possession of the New Vehicle and returned it to TOFA.

31.     As a result of WIGGINS' breach and non-performance, TOFA was forced to pay a total of $8,432.00 in expenses for the New Vehicle that WIGGINS was responsible for but failed to cover and/or otherwise pay. (See July 3, 2020 Receipt, Exhibit "E").

32.     When the New Vehicle was recovered, it had extensive damage that WIGGINS had not repaired nor paid for, in further violation of the Vehicle Purchase Agreement, thereby forcing TOFA to pay over $13,000.00 to recover and repair the New Vehicle.

33.     In addition, from June 23, 2020 through July 3, 2020, as a result of WIGGINS' breach and wrongful possession of the New Vehicle, TOFA was unable to generate revenue via the New Vehicle, equating to $9,000.00 in lost profits.

WHEREFORE, Defendants/Counter-Plaintiffs, ABRAHAM TOFA and A.B TOFA, LLC, pray that this Court enter judgment in its favor and against Plaintiff/Counter-Defendant, COREY WIGGINS, in the amount of $30,000.00, plus attorneys' fees and costs, and for any other relief this Court deems equitable and just.

FILED DATE: 10/8/2021 12:19 PM   2020CH05685

## COUNT II – NEGLIGENCE

34.    Defendant/Counter-Plaintiff, ABRAHAM TOFA and A.B TOFA, LLC, reallege and incorporate paragraphs 1 through 30 of their Counterclaims Against Plaintiff, as though fully stated and set forth herein.

35.    At all relevant times, WIGGINS owed TOFA a duty of care to act as a reasonable person would act when operating, maintaining, controlling the New Vehicle and while performing his contractual obligations under the Vehicle Purchase Agreement.

36.    At all relevant times, WIGGINS owed a duty to act as a reasonable Owner Operator and party to the Vehicle Purchase Agreement would, given the terms of WIGGINS' employment, past dealings, and the Vehicle Purchase Agreement.

37.    At all relevant times, WIGGINS owed TOFA a duty to transport enough loads to generate revenue that would cover the monthly costs of the New Vehicle.

38.    At all relevant times, WIGGINS owed TOFA a duty to provide Bills of Lading to TOFA in order to generate the revenue that would cover the monthly costs of the New Vehicle.

39.    WIGGINS breached his duty owed to TOFA by failing to transport enough loads to generate revenue that would cover the monthly coast of the New Vehicle.

40.    WIGGINS breached his duty owed to TOFA by failing to provide Bills of Lading in order to generate revenue that would cover the monthly coast of the New Vehicle.

41.    WIGGINS further breached his duty of care by driving unsafely, inappropriately, and/or in violation of the requirements of his Commercial Driver's License, thereby failing to reasonably prevent damage to the New Vehicle.

42.    Further still, WIGGINS breached his duty of care by failing to properly maintain, routinely inspect, and otherwise avoid damage to the New Vehicle.

21

FILED DATE: 10/8/2021 12:19 PM    2020CH05685

43.    As a result of WIGGINS' breach, WIGGINS caused property damage to the New Vehicle that WIGGINS failed to repair.

44.    WIGGINS further breached his duty of care by failing to report such property damage to TOFA.

45.    As a result of WIGGINS' breach, TOFA suffered monetary damages, including $8,432.00 in expenses, $13,000 in recovery and repair costs, and $9,000.00 in lost profits.

WHEREFORE, Defendants/Counter-Plaintiffs, ABRAHAM TOFA and A.B TOFA, LLC, pray that this Court enter judgment in its favor and against Plaintiff/Counter-Defendant, COREY WIGGINS, in the amount of $30,000.00, plus attorneys' fees and costs, and for any other relief this Court deems equitable and just.

Respectfully submitted,

ARNETT LAW GROUP, LLC

BY:  _____

Attorneys for Defendants, ABRAHAM
TOFA and A.B TOFA, LLC

Daniel J. Arnett (darnett@arnettlawgroup.com)
Mark R. Bennett (rbennett@arnettlawgroup.com)
ARNETT LAW GROUP, LLC
223 W. Jackson Blvd., Suite 750
Chicago, IL 60606
(312) 561-5660
(312) 561-5699 Fax
Atty No.: 33265

22